JOHN E. RISLEY, Appellant, *v.* WILLIAM H. SMITH et al., Respondents.

Where a party, for a valuable consideration, gives to another an order payable out of a fund not then in existence, such party cannot, by his own default, prevent the creation or realization of the fund and interpose the absence or failure of the fund as a defence to an action upon the order; so where an order is drawn upon a fund, to be paid upon the happening of a certain condition, which order is accepted, the acceptor cannot, by his own act, defeat the condition and then set it up as a defence in an action upon the acceptance.

Plaintiff was employed by the I., C. and D. R. R. Co. to find contractors to build its road. He procured defendants to agree to enter into such contract. It was agreed that the company was to pay, as part of the consideration for the work, $250,000. At the close of the negotiation and when the agreement was being reduced to writing, it was further agreed that the sum to be paid defendants should be increased to $255,000; that defendants should give to plaintiff, as compensation for his services, their order on the company for $5,000, payable *pro rata,* as the money became due under the contract. The agreement was carried out, the contract executed and the order given and accepted by the company. The contract was subsequently, and before any money became due under it, surrendered by defendants and canceled. In an action to recover the amount

of the order, *held,* that it was given for a good consideration, and could not be defeated by default of the defendants; and that defendants were liable.

*Risley* v. *Smith* (7 J. & S., 137) reversed.

(Argued March 31, 1876; decided April 11, 1876.)

APPEAL from order of the General Term of the Superior Court of the city of New York, setting aside a verdict in favor of plaintiff and granting a new trial. (Reported below, 7 J. & S., 137.)

This action was brought to recover the amount of a draft or order, signed by defendants, of which the following is a copy:

" $5,000.                    NEW YORK, *July* 13, 1867.

" For value received, pay to the order of John E. Risley five thousand dollars *pro rata,* as the money shall become due to us under our contract with you of this date, and charge the same to the account of

" Yours truly.
" W. H. SMITH.
" CHARLES KING.
" CONDE R. ALTON.

"*To* S. C. WILLSON, *as President of the Indianapolis, Crawfordsville and Danville Railroad Company."*

Which order was accepted by the drawee.

Plaintiff was employed by said company to find contractors to build its road. He opened negotiations with defendants, and procured them to agree to enter into a contract. A meeting was held between them and said Willson, as president of the company, whereupon it was substantially agreed that defendants would do the work, the company to furnish defendants the right of way, and transfer to them all work already done; " all the franchises, rights, and property of, and belonging to, the said Indianapolis, Crawfordsville and Danville Railroad Company " to become the property of defendants when they should have completed the road, they to receive in addition in money, city and county bonds, mortgage notes and

SICKELS — VOL. XIX.      73

cash subscription (contributed by parties residing in the vicinity of the road), a bonus of $250,000, payable in *pro rata* installments as the work progressed; and the entire road to be completed by the 4th of July, 1870.

At this meeting the question of plaintiff's compensation came up, when it was acknowledged that $5,000 would be a fair remuneration for his services. It was also suggested that, as by the contemplated contract the company would divest itself of all its available assets, by turning them over to the defendants, the latter should undertake to pay the plaintiff. Defendants objected to this, but finally expressed their willingness, if the bonus should be increased from $250,000 to $255,000, to give the plaintiff a draft on the company for $5,000, payable *pro rata* out of the moneys to become due to the defendants as they progressed with the work under the proposed contract. This was finally acceded to. Further subscriptions were procured to cover the increase, and the contract was completed and executed at the date of the order. The order was executed, accepted by Willson as president, and delivered to plaintiff. Defendants began work, but before any portion of the moneys became due under it, they abandoned the contract without plaintiff's knowledge or consent, and the same was surrendered and canceled. After the time had elapsed within which the moneys would have become due and payable, had the contract been fulfilled, this action was brought. Evidence was given upon the trial, to the effect that plaintiff should give a portion of the $5,000 to the president of the company.

Defendants' counsel moved for a dismissal of the complaint, on the ground that no liability on their part had been shown. The motion was denied, and said counsel duly excepted.

The defendants' counsel asked the court to submit to the jury the following proposition, among others: If the jury find that the draft was given to the plaintiff to enable him to collect from the company money due him from the company, and not as an evidence of indebtedness from the defendants to the plaintiff, they should find for the defendants. If the

jury find that the draft was given in the form of a draft for the plaintiff's convenience to enable him to collect the money from the company, the plaintiff cannot recover. The requests were denied, to which the defendants duly excepted.

The court directed a verdict for the plaintiff, to which exception was duly taken. Exceptions were ordered to be heard at General Term, in the first instance.

*James Clark* for the appellant. The burden of proving that the consideration for the draft was not valid was upon defendants. (*Jerome* v. *Whitney*, 7 J. R., 321; *Hinman* v. *Moulton*, 14 id., 406; *Jackson* v. *Alexander*, 3 id., 484; *Walrod* v. *Petrie*, 4 Wend., 576; *Prindle* v. *Caruthers*, 15 N. Y., 425, 431.) The $5,000 added to the bonus agreed to be paid to defendants constituted a valid consideration for the draft. (1 Pars. on Con., 448; *Miller* v. *Drake*, 1 Cai., 45, 46; *Briggs* v. *Tillotson*, 8 J. R., 304; *White* v. *Demilt*, 2 Hall, 436; *Funk* v. *Hough*, 29 Ill., 145; *Downy* v. *Hinchman*, 25 Ind., 453; *Menally* v. *White*, 3 Metc. [Ky.], 584; *Babcock* v. *Wilson*, 17 Me., 372; *Appleton* v. *Chase*, 19 id., 74; *Whitehead* v. *Potter*, 4 Ire., 257; *Soc. in Troy* v. *Perry*, 6 N. H., 164; *George* v. *Harris*, 4 id., 533; *Forney* v. *Shipp*, 4 Jones [N. C.], 527; *Nott* v. *Johnson*, 7 Ohio St., 270; *Abrams* v. *Suttles*, Busbee [N. C.], 99; *N. Y. and N. H. R. R. Co.* v. *Pexley*, 19 Barb., 428; 1 Smith's L. C. [m. p.], 224; 1 Story on Con., §§ 450, 451 *b; Farley* v. *Cleveland*, 4 Cow., 432; *Barker* v. *Bucklin*, 2 Den., 42; *Stewart* v. *Trustees of Ham. Col.*, id., 403, 417; *D. and H. Canal Co.* v. *West. Bk.*, 4 id., 97; *Tippee* v. *Bichnell*, 3 Bing. [N. Cas.], 710; *Webb* v. *Rhodes*, id., 732; *Arnold* v. *Lyman*, 17 Mass., 381; *Carnegie* v. *Morrison*, 22 Metc., 381; *Lawrence* v. *Fox*, 20 N. Y., 268.) Extension of time to one party is a good consideration for the promise of another. (*Thompson* v. *Gray*, 63 Me., 228; Theob. Law of P. and S., 6; 1 Law Lib., 4; *Pullin* v. *Stokes*, 2 H. B., 312; 2 Pars. on Con., 683; *Bangs* v. *Mosher*, 23 Barb., 478; *Tobey* v. *Barber*, 5 J. R., 68, 72, 73; *Alb. City F. Ins. Co.* v. *Davendorf*, 43 Barb.,

444; *Place* v. *McIlvaine*, 1 Daly, 266; 38 N. Y., 96; *Putnam* v. *Lewis*, 8 J. R., 389; *Myers* v. *Wells*, 5 Hill, 463; *Hart* v. *Hudson*, 6 Duer, 249.) Through the drawing and delivery of the draft by defendants, and its written acceptance by the company, plaintiff became an equitable assignee of an interest in the contract between defendants and the company. (*Noel* v. *Murray*, 13 N. Y., 167, 168; *Young* v. *Stapleton*, 34 id., 258, 265; *Vreeland* v. *Blunt*, 6 Barb., 182; *Peyton* v. *Hallett*, 1 Cai., 364, 379; *McMenomey* v. *Townsend*, 3 J. R., 71; *Bradley* v. *Root*, 5 Paige, 632; *Crocker* v. *Whitney*, 10 Mass., 319; *Cutts* v. *Perkins*, 12 id., 211.) Defendants' surrender of the contract without plaintiff's consent was a breach of their obligation to him, which rendered them liable for the amount secured by the draft. (*Worden* v. *Dodge*, 4 Den., 159; *Hatch* v. *Pryor*, 3 Keyes, 441, 443.)

*Thomas H. Rodman* for the respondents. The draft was not a bill of exchange or subject to the law merchant. (*Cook* v. *Satterlee*, 6 Cow., 108; *Morton* v. *Naylor*, 1 Hill, 583; *Van Wagner* v. *Terrett*, 27 Barb., 181; *Alger* v. *Scott*, 54 N. Y., 14.)

Earl, J. It is agreed upon both sides that the instrument of July 13, 1867, drawn by defendants upon the president of the railroad company, is not a bill of exchange, but that it operates as an assignment of the fund upon which it is drawn to the extent of $5,000. And the only question for our consideration is the obligation assumed by the defendants by this instrument under the circumstances surrounding its execution.

The railroad company owed the plaintiff something for services in procuring the defendants to enter into a contract to build its road; the amount to be paid him had not been liquidated. At the time the negotiations between the defendants and the president of the railroad company were substantially closed, the question of plaintiff's compensation came up. As all the assets of the company were to go to

the defendants under this contract to build the road, it was a matter of consideration how the plaintiff should be paid. It was first suggested by the president of the company that the defendants should pay him out of the $250,000 which they were to receive under their contract. This they declined to do, and it was then arranged that the company should increase its available assets $5,000, and agree to pay defendants for building the road (besides giving them the road and all its franchises when built) the sum of $255,000; and then they would give the plaintiff the draft of July thirteenth. This arrangement was carried out; the contract was executed and the draft was given and accepted at the same time. The substance of the arrangement was, that the contract-price to be paid the defendants for building the road was increased $5,000, in consideration that they would assume and pay the plaintiff the sum of $5,000 out of the moneys to be paid to them on their contract. The mode of payment was specified in and arranged by the draft.

There was abundant consideration for the draft and every obligation which it imposes upon the defendants. The plaintiff agreed to take his pay in this way, and for the time being, at least, he was confined to his remedy upon the draft. This furnished a consideration. But further, the defendants received a contract from the company to pay them $5,000 more for their undertaking in consideration that they would pay out of it this sum to the plaintiff. If the defendants had absolutely agreed to pay the plaintiff this would have been an ample consideration to uphold the agreement. If they had gone on and performed their contract with the railroad company, and the money under their contract had thus become due and payable, they could not have repudiated this draft and defeated its payment on the ground that there was a want of consideration. The obligation of the defendants to pay was not, however, absolute, but conditional. If, without their fault, no money became due under the contract, the $5,000 could not be paid. If the railroad company had prevented them from performing, then they would have been

absolved from any liability, and the company would have been liable upon its acceptance.   But can they give this draft and then set up their own default to defeat its payment? We think not.   For a sufficient consideration they gave this draft, payable out of a particular fund, and they cannot, by their own default, prevent the creation or realization of that fund, and then set up the absence or failure of the fund as a defence to this action.   Having, by their own fault, prevented the condition from arising which would make the payment to the plaintiff due, they are estopped from setting up the failure of the condition to defeat the plaintiff's claim.   (*Gallagher* v. *Nichols*, 60 N. Y., 438, 448.)

But there is another view : the fund may be treated as in existence, in the possession of the acceptor, to be transferred to the plaintiff upon the happening of a condition.   The acceptor could not by its act defeat the condition and then set it up as a defence to plaintiff's claim when sued upon its acceptance.   So, the fund was to be transferred to the plaintiff upon the performance of a certain condition by the defendants, and they cannot defend by setting up their own voluntary non-performance.   Defendants' obligation, as thus defined, grows out of the whole transaction.   The two parties to the draft, the drawer and acceptor, certainly incurred some obligation by what was done ; they were parties to the scheme to pay the plaintiff, and that scheme was embodied in the draft and the contract.   It must have been understood by the plaintiff that he was to get his pay through the scheme ; and the other parties must have intended that he should thus get his pay.   It cannot be supposed that either of the other parties intended to reserve the right to nullify the scheme at will at any time.   It was a part of the scheme that the other parties should perform all their obligations then entered into to create or transfer the fund drawn upon.   They each assumed an obligation to the plaintiff to act in good faith toward him in carrying out the scheme, and not to defeat it by any mere default.

These views dispose of the merits of this case, and it is

only necessary to say further, that the fact that the plaintiff was to pay a share of the $5,000, when realized by him, to other parties, does not affect his right of action for the whole sum.

The order of the General Term must be reversed and judgment ordered for plaintiff upon the verdict, with costs.

All concur.

Order reversed and judgment accordingly